Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Cates presiding, along with Justice Wharton and Justice Bong. The first case this morning is number 5-220211, Copper Bend Pharmacy, Inc. et al. v. OptumRx, etc. Arguing for the appellant, OptumRx, Inc., is Michael Holacek. Arguing for the appellee, Copper Bend Pharmacy, Inc. et al. is Mark Cooker. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning, Your Honor. I want to warn you that there may be lots of questions regarding this, so I apologize in order to not interrupt you, but as you know, that's how things kind of go in these proceedings. Mr. Holacek, you're going first for OptumRx? Yes, Your Honor. All right, when you're ready, you may proceed. Thank you, Your Honor, and may it please the Court. This is a breach of contract lawsuit by 45 pharmacy businesses against OptumRx. The Circuit Court allowed plaintiffs to the same contracts. This was error for several reasons. First, under California law, a plaintiff must prove both procedural and substantive unconscionability, but the Court's procedural findings are erroneous on their face. For example, the Court emphasized that the arbitration clause was on page 119 and several paragraphs long. The FAA and California law could not be clear that whereas here an arbitration clause is set off in a standalone section with a separate heading, there is no surprise as a matter of law and multiple paragraphs make an arbitration clause more easier to read than less. It wasn't entitled an arbitration clause, though, was it? It was titled Alternative Dispute Resolution, and a California appellate court two years ago, that's in the Torres-Sellis case, 52 Cal App 5485, looked at a clause with the exact same heading and said, Alternative Dispute Resolution, that was an employment case. People should know that that means arbitration. This is a business to business dispute. So I believe that matter has very recently been settled by a published California appellate court. And let me ask you another question while I'm at it. Are you talking about the provider agreements now or the provider manuals or both? For this particular issue, the standalone section of the arbitration clause with its own heading, it would be both. The page number of page 119 only applies to the provider manual. The provider agreements were much shorter, 15 to 20 page documents. But even there, the arbitration agreement had its own heading and was set off in its own section. Is there any dispute in this case that the pharmacies were following the provider manuals? Is there any dispute that this is the contract they want to sue on? I don't believe so. It's named in the complaint. They cite it several times. They cite provisions from the provider manual that they are suing on it. That said, it's important to know that the only way to get into the Optum network to even submit claims to Optum is through a provider agreement. Every single pharmacy admitted that in their declaration that to join the Optum network, they had to join a provider agreement, either themselves, they could directly enter one with Optum, which three did, or through a PSAO, which 42 did. But the dispute, it seems to be that through the PSAO, they never saw the provider agreement. Correct. And that really is an issue because respectfully, the circuit court just got that point of agency law wrong. And I quote the circuit court at page 2341. The arbitration clauses in the PSAO agreements cannot bind plaintiffs because plaintiffs never saw them and thus could not send to them. That is just flat wrong under agency law in both Illinois and California. When you have a principal agency relationship, you cannot get out of that contract by claiming that the agent didn't show you the contract. Now, agree, it was our burden. Just one more question. And again, I'm sorry. But do we have in the record any contracts between the pharmacies and the PSAOs that show the agency? No, we do not. Those were not produced in that action. We don't have them. But I would like to briefly talk about the circumstantial, very powerful circumstantial evidence we have of that agency relationship. So we introduced all of the provider agreements themselves in the record. They all say multiple times, you know, we are agents of the pharmacies and we're entering into this agreement on behalf of them. We produced a declaration in the chart linking every pharmacy to its provider agreement. That's part of a national database. A pharmacy has to say which PSAO they're part of. And we produce that in the chart. We also, you know, plaintiffs admitted, like I said, in their network. And then in the provider manual itself, there's dozens of references to PSAOs and it defines them as plaintiff's agent. So plaintiffs are suing under this contract that repeatedly says they have this agent to PSAO. They know who this PSAO is because they've joined them. And for them then to disclaim that they're not bound by the contracts that their PSAO signed is really strange credulity. And Judge Rakoff analyzed the same issue in the Park-Ermit case and said the pharmacies can't escape these agreements by claiming they never saw them. If they have a problem with that, they need to talk to their PSAOs. They can't complain to Optum about that. Now, they also say that they weren't allowed to see them. And that's a slightly different argument. And that there is a narrow exception in agency law, where if the principle is prohibited from showing the agreement to the agent in narrow circumstances, the agent can get out of that contract. But there was no evidence of that here. The contracts themselves say that contemplate that the pharmacies will have access to this agreement and they are not allowed to because it's clear on the face of the contracts. For example, at page CI-344 provision 3.3, it says pharmacy will not share the terms of this agreement. And two pages earlier at CI-342, it defines pharmacy as the individual pharmacies, not the PSAO. There's another example at CI-448, which defines pharmacy as the individual pharmacy, not the PSAO. And I can give you page after page after page, but if you look at the contract, they say that the pharmacy can't share the terms of the contract. And they define the pharmacy as these individual pharmacies. So there's no evidence that a PSAO was not allowed to share this with a pharmacy. And what about the argument that they never saw them? That is just wrong under agency law. An agent can't get out of a contract by claiming that it never saw the contract. They would have to go a step further and say that the PSAO was prohibited from sharing it with them. And there's no evidence in the record of that. With the provider manuals and the provider agreements, was there reference back and forth to the alternate dispute resolution cost or incorporating one into the other? So both agreements refer to the other agreements. So the provider agreement- Wait, wait. When you use the agreement, that's a really different term. We need to know which agreement. Yes. So I think the answer to your question is no, that one- Arbitration clause in the provider manual. Correct. It refers to the provider manual as a whole and says it is incorporated into this contract and that the pharmacy must abide by every term in the provider manual. It doesn't call out specifically the arbitration clause, which is not a problem because under the FAA, you have to treat an arbitration clause on equal footing with every other clause. So there can't be a special rule that you can a provider manual by reference and all the clauses come in except an arbitration clause. Except the arbitration clause has to be procedurally and substantively conscionable. True, but every clause has to be. And plaintiffs are suing over parts of the contract. They're cherry picking page 52 of the contract and they're suing off over that. If page 119 is invalid because it wasn't specifically called out in the provider agreement, then why would page 52 be incorporated as well? And your honor, I mean, more specifically. So even though the provider agreement did not specifically mention the arbitration clause in the provider manual, the provider agreement itself has an arbitration clause. All of them except for the elevate PSAO, they negotiated it out. And this is a big problem respectfully with the circuit court's ruling. There's really a tension here and that the circuit court found that one of the PSAOs was able to negotiate out an arbitration clause. And so it's not binding on the pharmacies, but yet Optum then can't enforce the arbitration clause that it bargained for and got in the other agreements. That's never reconciled in the circuit court's order. Plaintiffs never responded to that point in their brief to this court because there's no answer to it. If they're not binding on one because they negotiated it out and had the bargaining power to do it, then it makes no sense that they can't be bound to the ones where we did bargain for it. So that's another problem. Well, that's a conclusion that you've reached. Once you get to the word you've bargained for it, then you're concluding that a lot of things went on in order to reach that conclusion, which is why we're here, obviously. Correct. But if you assume for the moment that the provider agreement arbitration clause is not enforceable for whatever reason, agency, whatever, what would be your argument as to why it's enforceable under procedural substantive conscionability in the manual? Because it seems like everyone agrees that's a contract. Correct. And our argument there is they are suing on that contract. Why is the clause procedurally conscionable in your view? Procedurally, well, procedure goes to the California law, oppression and surprise. We've already, I think, discussed our position on surprise that because it's in a standalone section with its own heading under the Cora Sully's case that I mentioned, there can be no surprise as a matter of law. So then you look at oppression and oppression. Oppression is about whether there is a meaningful choice on whether to contract with Optum or not. And that takes us to the Uptown Drug case that both parties discussed extensively in their briefs. And Uptown Drug said that in this type of relationship, there's no oppression because there's lots of other PBMs like Optum. Optum only has in the record here shows 21 to 25 percent of the market share and no cases ever held that a company has some right to 100 percent of another business's customers. And so there are many other PBMs that the pharmacies here could have contracted with. They may have wanted to contract with Optum, but they didn't have to. And so we think Uptown Drug is directly on point and there's no there's no oppression here. So no surprise, no oppression means no procedural accountability. It's in a standalone section, easy to read. And under California law, the analysis stops because you have to have both procedural unconscionability and substantive unconscionability. And so when you have no procedural unconscionability, you stop. And even if this court finds that there's a little bit of procedural unconscionability, something about the layout of the arbitration clause, we don't think there is. But it's a sliding scale such that if you think there's a little bit of procedural unconscionability, then California says you need a lot of substantive unconscionability in order to invalidate the contract. And and here that we haven't talked about substantive unconscionability, but but there are issues with the circuit court's ruling as well. And I'd like to briefly touch on Viking River, which came out last month. Judge Rudolph did not have the benefit of Viking River. And so he said he found that because this was supposed to be a bilateral arbitration where you couldn't join all 45 pharmacies together, that that made the agreement unconscionable. He said there's no reason why you should avoid the efficiency of having all 45 of these together. The Supreme Court last month just said, no, that's wrong. You have to enforce the party's contract if they want bilateral arbitration. You can't strike that because the court believes it would be more efficient to have all 45 together. And that era permeated a few different parts of the circuit court's ruling. It went I mean, that in and of itself was a reason for unconscionability. He said that rose that raised the costs of arbitration because you couldn't join claims. And then it was in the severance section of his opinion. It was he said, you know, because there are a few different unconscionable provisions that you couldn't sever. And so I respectfully I think at a minimum, a remand here is warranted so that Judge Rudolph can reassess the arbitration agreement in light of Viking River. He didn't find any single provision unconscionable. He said it was in the totality. That's one thing the plaintiffs and us agree upon. And so if you if you knock out a few of those legs from his finding and Viking River certainly does at least two or three of the findings, then the totality of the unconscionability falls apart. And I think at a minimum, a remand is warranted here so that that that the circuit court can relook at the arbitration agreement under the proper legal standards. Well, the Viking River case was a labor and employment case. Correct. Correct. But neither party has had the opportunity to brief this case. And just for the benefit of my colleagues, we're talking about Viking River Cruises Inc. versus Mariana M.O.R.I.A.N.A. 142 Supreme Court 1906. Do you think that it would be beneficial to this our reply brief and we inserted a paragraph in our brief at the last minute? But I do think that more briefing on that could be beneficial because it really is a game changer in our view. Okay, well, I'm willing to give how many days would you need to do that? We could be a very short no more than seven pages. We could do that in in one week, Your Honor. Okay, how about we give you seven days Is that okay with you, Justice Wharton? Yes. Justice Vaughn? Yes. Let's give Optumarek seven days business days to respond no more than seven pages. And then we'll give the appellees seven days from the day they received the response to file a reply. Is that okay, Mr. Cooker? Yes, ma'am. Yes, Your Honor. Very good. Mr. Honachek, you're out of time. I'm sorry, Justice Wharton. Yeah, I have a question. It's not directly on what the discussion has been so far. I'm just curious as to when the pharmacy, the individual pharmacies contract for optimum, if the allegations of a claim for true, were they informed that optimum rewards larger sellers based upon volume who are in direct competition with them, better prices, and also that optimum is also in direct competition with them as a result of its mail order of business? It would appear to me that this is just layman perspective, an unhealthy situation where there is a conflict in that in two ways being in some ways in competition with the pharmacies, it then has the authority to set the maximum allowable costs. Can you explain that to me? Yes. So unfortunately, Your Honor, I may not have a very satisfying answer here because those are just allegations at this point. And because we're at the very start of the case, we've just started discovery. And I don't think there's anything in the record yet on those points. So they are just allegations. But I think you accurately characterized the allegations as I understand them, that optimum competes with the pharmacies through its own mail order business. But I don't think there's any evidence on that at this time. I have another question. And without reading the briefs and everything, I have a concern about the individual customer who is not covered by any pharmaceutical plan. And it seems that the customary charge is the only thing that the pharmacies have really any control over. You don't have any control over the maximum allowable costs, the ingredient costs. It's just that one aspect. And my concern for this particular individual consumer without coverage is that throughout this whole thing, somehow they are really being affected by all of this that goes on. They have no insurance coverage, no control over the situation. And there has to be a direct effect upon what they're going to have to pay out of pocket. As a result of all these things that are going on between the discounts, if it's true, that are given to the large wholesale sellers, the situation with the optimum being involved in get a larger wholesale cost as a result of not being volume buyers. My concern is that somehow all of this falls down and the weight's going to fall on that guy who does not have any insurance. Yeah, your honor, those are very good concerns about the consumer. I will say that respect to the pharmacy, I don't think it's necessarily true that they have no power here. As I explained, the way this works is for almost all the pharmacies, they join these huge networks with these big companies who are actually drug wholesalers, McKesson, Cardinal Health. And so they are volume buyers and they can choose which one to join. And we have a chart showing each year and which PSAO the pharmacy joined and they move around and because the contracts are different. And so I think there is competition, at least at that level. I can't speak to the level of the consumer because that's not really, there's no evidence in the case about that. But I will say that the pharmacies have choice and power because they band together with these large Do you believe we're applying California law, federal law or Illinois law here? It's a good question, your honor. I believe it's it's almost all California law because a vast majority of the contracts call for California law. The one exception are the old catamaran agreements. Those would be the agreements before 2015 that call for Illinois. What about the Brennan case that says because you're dealing with an FAA and an AAA that federal law applies? Well, I agree that the Federal Arbitration Act applies. And in some cases, we've cited it like the Viking River case applies the FAA. But the unconscionability analysis, which is really at the crux of the case, looks at state law and federal law. It's pretty clear that for unconscionability, there is no federal law on unconscionability. So you look at the state law. That's my Does it matter whether it's federal law, California law or Illinois law as to what standard of review we apply? As far as the standard of review, I believe that that would that would just be Illinois law. And and we've briefed that and explained why we think it's de novo. I know plaintiffs disagree and thinks it is abuse of discretion, but there was no evidentiary hearing here. No live witness testimony, no credibility determinations. So that's why we said it should be de novo. Is the circuit court's primary basis for holding unconscionability? Yes, the primary basis for the ruling is that the provider manual is unconscionable and that the provider agreements do not bind the pharmacies because of the agency ruling that we believe was incorrect. Does that also strengthen your position in that it's de novo because findings of unconscionability are usually reviewed de novo? Yes, we cite a case in our brief to saying that unconscionability is a it's a legal determination. The court can consider some facts and evidence, but ultimately it is a legal determination whether a contract is unconscionable. I have no other questions. Thank you. Mr. Holacek, just to clarify what are in my own Justice Vaughn referred to, you have federal substantive law, which applies in this case, correct? Through the FAA. That is truly federal law where the federal courts have spoken as to substantive issues. That is federal law. We have the contracts, whether they're contracts or not, the documents say that California law applies, right? Correct. And then we have an Illinois court making a decision on unconscionability and the application of the agency rules, and you believe that's a de novo review under Illinois law? Correct. I agree with everything you said, Your Honor. Okay. All right. Justice Vaughn, any other questions? No, thank you. Justice Wharton? No. Okay. Mr. Holacek, you're off the hook for just a minute. Mr. Cooker? Hopefully he's off the hook for 15 minutes, Your Honor. I'd like to just start by responding to Justice Vaughn's question and how it relates to this case. Justice Vaughn is correct. We have serious allegations here of how these independent pharmacies are being treated differently from large chains, how their prices are being set by a competitor that operates its own mail order pharmacy. Now, what's that have to do with arbitration? It has to do with the following. We need discovery about those facts to prove our case. We cannot get that discovery under this arbitration clause. Matter of fact, we can't get any discovery under this arbitration clause. In the lower court after the circuit court denied motion to compel arbitration, the circuit court actually compelled Optum to produce this information. Optum cross-moved for a stay of proceedings. It was denied. They appealed to this court to stay proceedings. In that motion for stay, all these discovery issues were part of their filing. Our motion to compel discovery, circuit court's ruling compelling it, and in that the circuit court ordered discovery that we could never get in arbitration. I believe that's right on page two of their motion for stay. The fact that those allegations are being made in this case demonstrates why the contract is substantially unconscionable, because we could never prove that case in arbitration, because we could never get discovery. This is an arbitration clause that makes it impossible to win and prohibitive to try. Now, on the standard of review issue, the court did make findings of fact. It found that the clause is adhesive, and that finding was amply supported in two ways. Let's talk about the provider manual and the provider review. Provider manual, there's no question it's adhesive. You get it online, that's your contract. You don't get to negotiate it or sign it. It's undisputed on the facts that that is a contract of adhesion. I think Justice Cates is onto something, because notwithstanding all of the argument of my opponent, the manual is the dog wagging the tail. The agreement is the tail wagging the dog. Now, why is that the case? The reason the agreement is the tail wagging the dog is it's subject to change at will in the manual. What happened here, and this is all in the record, is that, for instance, there was a manual in ... There was an agreement with an arbitration clause in 2008, catamaran clause, that was very different. Then in 2015, Optum came along and said, forget about that, here's your arbitration clause. They argued it's retroactive to all the controls. By the way, along the lines of procedural unconscionability, it's procedurally unconscionable when there's confusion about what applies when. They argued in this case, it's retroactive. They argued in the prescription care case in California, it's not retroactive and it can't be retroactive. That itself creates confusion. Now, on the agency issue, let's talk about the agreement. Again, I think the agency issue is largely a red herring, but I'll get to that. What Mr. Holacek completely misses is there is a distinction between being bound to a contract through your agents and procedural unconscionability. There's a quaint notion, we have a quaint notion of contracts, that two people sit down and they hammer out an agreement and they each review it and they each appreciate it and each sign it understanding everything that's in it. That's a contract. You can have a contract without all those things happening, but it doesn't make it procedurally conscionable. What the court stated very specifically, quoting the plat court in contracts with the PSAOs bound the pharmacies to those PSAO contracts without them. Assuming they formed a contract, assuming they satisfied their proof of agency, the arbitration clauses in the agreements were procedurally unconscionable because the pharmacies were not provided with copies of the agreements, did not sign the agreements and state they never saw the agreement. The fact that even if they did have to authorize the agent, that is not enough to show it's procedurally conscionable, that the party needs to be aware of what the party is being bound to before the party becomes bound. There's a case which was an anesthesiologist. Anesthesiologist was actually a member of an LLC. The LLC negotiated an agreement with the hospital that had an arbitration clause. No question he was bound to the agreement, but he never saw the clause, never saw the agreement, signed a one-page document acknowledging it, but never saw it. The court held even though there was an agency they didn't, because they did not have an opportunity to review the agreement before they were bound, it was procedurally unconscionable. So that alone gets you procedurally unconscionable. Now, then you have some other surprise issues. Okay. Let's talk about the costs and the Parada case, which I urge this court to read if you haven't read it already, which is on point for a whole bunch of things, is really on point with this. In the Parada case, like this agreement says we incorporate the JAMS rules. Here it says we incorporate the AAA rules. Okay. Nothing terrible about that, except they modified those rules to require three arbitrators, which they've never come, the only reason for three arbitrators and one plaintiff. Okay. You can't have more than one plaintiff, but you got to have three arbitrators. The only reason for that is to increase the cost of litigation and make it prohibitive. And that's what the court found. The court found that the combination of three arbitrators having to pay the costs and not being able to join with other parties had the effect of deterring people from vindicating claims. So what the court in Parada said basically is that you could see the JAMS agreement. Here it is. A customer might receive a nasty shock on learning of the amount of fees charged by JAM for three arbitrators and the requirement of depositing these fees in advance. So Parada is right on point with procedural unconscionability of that aspect. There's a lot more to procedural unconscionability than just having Eurasian agree to something or just having it in regular writing. It was not in the table of contents. So you've got 120 page manual, you get it online, you look in the table of contents, there's nothing about arbitration. The case Mr. Holacek cited was not 120 page agreement. And you shouldn't have to search it for the word arbitration. You're a pharmacist, there's all kinds of stuff in there. You can look at the manuals, how you fill a prescription, how you make a claim, all kinds of operational stuff. So it was not called out in the table of contents. It did not tell you about how much the cost would be. And so there's elements of both prize and oppression. In terms of whether the contract, the agreement itself is adhesive, first of all, 23 out of 24 PSAOs had the arbitration clause language in their agreements. It's part of the template contract. 2,500 I believe, out of 2,500 separately arrived at pharmacy agreements had the arbitration clause. Now, with all due respect, what Mr. Holacek said about agency is nonsense. It is nonsense. There was none of that evidence was presented to the lower court. There was no evidence of agency presented to the lower court. The only evidence of agency was a citation to our complaint that described PSAOs as quote intermediaries. So that was what they raised in the lower court about agency. There was no evidence about the bargaining power of PSAOs. You could look at, if you look at the record at page 160, this is what they cite. Okay, that's the affidavit of Joshua Van Ginkle, who's the provider relations person at Optum. And in his discussion, his entire discussion about PSAOs, the only thing he says is that they're large companies, some of them, I think Amerisource, Bergen, LeaderNet, he never uses the word agent one time. I'm looking at page 160 of the record. He never used the word agent one time. And now they're arguing agency. Based on what? Now they're citing to language in these provider agreements to this court, they never cited to the court before. And what do those agreements say? Those agreements do not contain the names of one of the plaintiffs. Those agreements say the PSAO is speaking on behalf of the pharmacies listed on Exhibit A. Where's Exhibit A? Not in the record. There's no evidence that these pharmacies were, these PSAOs were agents for these pharmacies. In fact, the lower court ruling specifically finds my declaration Exhibit A, which says many of them would not belong to the PSAOs when these agreements were entered into. And of course, our clients never saw them. So their whole agency argument is based on a secret document that our people never saw, and that does not mention our people. So there's simply no basis for the agency argument. So in terms of, you know, I'm prepared to argue why the Viking case isn't a game changer, but let's clarify some notions here. You've got an arbitration agreement that's going to require you to spend over $100,000 just in arbitrator's fees, and you can't get any discovery, and you have to have three arbitrators. And their proposal for getting discovery is this. Your honors, I want you to picture yourselves as being an arbitration panel of three. How would you like it? Because I can't do interrogatories or document depositions. I just sit in a hearing while I essentially take their depositions and find out what they know for days, and then I get to pay, you know, $10,000, $15,000 a day for the privilege of taking my discovery in front of three arbitrators. That's the process they want us to engage in here. It's utterly absurd, and it is guaranteed to make sure claims aren't brought. So, you know, it's not the bar on joinder per se that is the problem. It's the bar on joinder combined with the fact of the cost. If this arbitration clause said, Optum will pay one. Look, we're a $73 billion company. We'll pay all the arbitrator's fees. Some arbitration agreements say that. You paid a filing fee? Okay, we'll pay for all the arbitrators. I would not have the same argument here, but it's the fact that they're going to require us to litigate over and over and over again, and at a cost of a fortune, that is what makes the bar on joinder unconscionable, and nothing in Concepcion or any Supreme Court case said that the purpose of those cases is arbitration is supposed to be efficient, less expensive, and faster. Everything about this clause will make it inefficient and more expensive, so allowing us to have multiple parties doesn't create a problem under the Federal Arbitration Act. Finally, I just want you to think of arbitration as a three-legged stool. Like three-legged stool, one leg is missing, the whole stool collapses. So we need three things, at least three things for fair arbitration. We need fair discovery so that we can get the evidence we need to prove our case. We need reasonable costs, and we need a fair trial process with full right of cross-examination. Here, we can't get full right of cross-examination because we have to pay in advance for any kind of an oral hearing, and we don't get a chance to depose the other witnesses, which deprived us of effective cross-examination. Take away any one of those legs, and the stool collapses. Here, Optum took away all three. This is not a closed case. The lower court should be affirmed. Mr. Cooker, is it Cooker or Cook? Cooker's good. Cooker's good, okay. In the arbitration clause that's in the provider manual, there are lots of limitations, if you will, but some of the limitations are standard limitations in arbitration agreements. In your three-legged stool, under procedural unconscionability, I think we have to look at what has been limited and what has not specifically. Would you agree? Yes. Okay. I mean, the limits on discovery here are extreme. No discovery, other than- Well, there is some discovery under this document. No discovery of anything the other side would have that might help your case. Certainly, no discovery along the lines that the judge has already ordered. I mean, there's an exchange of exhibits, so we get to see what they would introduce, and they see what we would introduce, and exchange of expert reports. There's not one interrogatory, not one document request, not one deposition. There is a provision for expert witnesses. Yes, but your expert needs information to base an opinion. Without the ability to get the information from Optum, having an expert doesn't do any good. Doesn't the Arbitration Clause, Paragraph M, Alternate Dispute Resolution, subparagraph from Enumeral I, talk about exchanging documents? Exchanging- Deposing expert witnesses? It talks about exchanging exhibits that would be used at the hearing. It says, all information and documents relied upon by the expert witness will be delivered to the opposing party. The opposing party will be permitted to depose the expert witnesses. Right, that's right. So, we would get to see what their expert relies on, but we would never get the information we need to prove our case so we could even get an expert. As the record already demonstrates, we need to know how they set MAC pricing. We need to know how they decided what they classified as brand or generic. We need to know what they paid other those are all information in their exclusive control and we can't get any of it. Okay, John, I see you're out of time. Justice Vaughn, did you have any other questions? No, thank you. Justice Wharton? No. Okay, thank you, Mr. Cukor. Mr. Holacek, right off the bat, I'm interested in the representation made by Mr. Cukor that the court below did not have the agency argument that you made before us here today. Is that true? No, it is not. You did not argue agency? No, that is not true, Your Honor. The declaration that Mr. Cukor talks about, I agree, maybe doesn't mention the word agency. I'm not even sure that would be appropriate for a fact witness to opine on whether there's an agency relationship. But we put all of the agreements in evidence, the say agency all throughout. We linked every pharmacy to every PSAO and in the declarations themselves that Mr. Cukor submitted. Every pharmacy says, this is how we do business with OptumRx. But did you link every pharmacy to the PSAO at a time that was relevant to the arbitration clause? For example, in 2015, was every pharmacy named here linked to the arbitration clause? Yes, in the chart that's attached to the declaration that we were just talking about and Judge Rakoff in the Park-Ermit case, analyzed this exact issue with the Exhibit A issue and said that you don't need the Exhibit A because the contract itself contemplates that pharmacies will be added over time. And many pages of analysis from Judge Rakoff that I think is directly on point here. Well, I'll go ahead and read that. But my concern is, how do you bind a pharmacy at a time when they're not mentioned on quote Exhibit A? How do pharmacies come and go and still be bound by the same contract? The provider agreement specifically provides for that. It says that pharmacies will come in and out. It's how it happens. And that the provider, the PSAO is responsible for credentialing and bringing the pharmacy into the network. It's all laid out in the provider agreement because that's how this works with pharmacies coming in and out. But I'm concerned about the view from the pharmacy's point of view, not the PSAO's point of view. I'm looking at it from the pharmacy's knowledge of what's going on. How do they know? Well, from a pharmacy's perspective, I like to think about it this way. This is not like a consumer ordering from Domino's Pizza online where anyone could just go online and you create an account and you order a pizza. That's not how you submit a claim to OptumRx. The provider manual explains you need to have a provider agreement. The provider agreement explains the terms and how you're paid and the reimbursement rates. And you submit your claims through the PSAO and they're adjudicated through the PSAO. It's all laid out in the two-part relationship with OptumRx. And no pharmacy can join the network and submit claims unless they're part of that network. So I don't think there's any surprise that they would be bound by the provider agreements. I would like to briefly touch on the discovery points because Mr. Cukert... Go ahead. On discovery, first of all, he is very narrowly reading the discovery limitations. These are complicated cases that will depend on expert witnesses. And there is full expert discovery here. And everything Mr. Cukert said, that was his argument below, but with no evidence. It was all attorney argument about, we think we need more discovery. We need document requests. And California law is very clear that you have to do that with admissible evidence. You need declarations or an expert declaration. There's not enough publicly available knowledge. This is what more we need. It was pure attorney argument. And we have to remember that the discovery limitations are mutual. They govern all of the disputes between the parties. And these are large companies like McKesson and Cardinal Health and OptumRx who have decided that when there are these disputes over these long running transactions, we're going to resolve them by what some cases where it won't work out for Optum. We'll have to prove that there was a fraudulently submitted claim by a pharmacy. And we're not going to get to depose the pharmacist. There's no case cited by either party in a business to business relationship with the discovery restrictions have been held to be unconscionable. The businesses can decide from themselves, this is how we want to resolve our disputes. All of the cases that Mr. Cukert cites are employee cases, consumer cases. This case is different because it involves businesses. Well, you want us to give you an opportunity to talk about Viking River and it's an employment case as well. So I mean, it seems that there are no cases exactly on point. Isn't it true under the AAA rules that an individual can actually win an arbitration and still be assessed the costs of the arbitrator fees? Yes, but it's a default rule that both parties pay their own costs. No, I'm talking about one party can actually win the arbitration and pay the other side's costs if there was a valid reason to bring it. Are you familiar with that rule? Of cost shifting, the arbitrator has the discretion. Yes. You're familiar with that rule? I am. I am. Yes. And these cases, I'm assuming if they're as alleged, are probably based on a computer program somewhere that somebody wrote because nobody sits there and calculates this by hand. And you don't think discovery on that computer process is an important part of the fact-finding mission by the plaintiffs? It could be. And I don't see a reason why they couldn't get the MAC pricing information as we stated. Where would I find that in this particular clause? Because I don't see it. It actually is not in the arbitration clause itself. It's under the MAC pricing section where any pharmacy with a written request can write and ask for Optum's MAC pricing information, how it calculates MAC pricing. But if I have a dispute, the clause controls the dispute. Are you saying that I can use another clause to get discovery? Certainly. And that, I think, goes to the point that whose burden is it here to strike this down and what's the court's responsibility to constrain provisions in favor of enforceability? And I think it could be harmonized. And that's why I'm asking the question. So if we have one plaintiff with one dispute, they can use a different section of the contract. But the cost of the arbitration for one plaintiff, three arbitrators, and if they want an oral hearing, as I look at this, they have to pay in advance for the oral hearing. So there's a punitive aspect if you ask for an oral hearing as opposed to a written document hearing. I disagree with that because that is actually the default AAA rule. So if this arbitration... Which could be punitive in my view. No, no. Maybe for a consumer or employment case, it would be really hard to say that AAA rules, which are the rules that are the most commonly used, are unconscionable. But that is the default rule. And for two businesses to say that those are the rules that are going to bind us, I don't think that could be unconscionable for businesses. Is the default rule to take away mass or class actions? Yes, under AAA as well. You specifically say there's going to be a mass or class action, otherwise the default is bilateral. I've watched those AAA rules change over the process of my career as cases come out from the Supreme Court. They do try to keep it up to date with the latest FAA jurisprudence. Yes. Okay. Justice Wharton, do you have anything else? No. Justice Vaughn? No, thank you. Mr. Holacek, thank you for being on the hot seat most of the day. Mr. Krueger, thank you for your arguments as well. I've certainly enjoyed the discourse. But that will conclude the arguments for today. And this matter will take under advisement and issue an order. Mr. Holacek, you'll give us a seven-page document. Mr. Krueger, no more than that.